Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

LISA EARL; individually and on behalf of K.S., a minor child and K.W., a minor child; OSCEOLA BLUEHORSE on behalf of O.B., a minor child and I.B., a minor child; and THE ESTATE OF JACQUELINE SALYERS, by and through Lisa Earl, the Personal Representative of the Estate,

Plaintiffs,

v.

SCOTT CAMPBELL; the marital community of Scott and Jane Doe Campbell; the CITY OF TACOMA; SCOTT SHAFNER; the marital community of Shafner and Jane Doe Shafner; JACK NASWORTHY; the marital community of Nasworthy and Jane Doe Nasworthy; CHARLES TAYLOR; and the marital community of Taylor and Jane Doe Taylor.

Defendants.

NO. 3:17-cv-05315-BHS

FIRST AMENDED COMPLAINT AND JURY DEMAND

In accord with the Court's March 29th Order (Dkt. #95), Plaintiffs now allege as follows:

FIRST AMENDED COMPLAINT AND JURY DEMAND – 1

EAR010-0001 5751540

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

# I. PARTIES

1. Lisa Rideout-Earl, the mother of the deceased Jacqueline Salyers, is a resident of Pierce County, Washington. On July 14, 2016, Rideout-Earl was appointed the Personal Representative of the Estate of Jacqueline Salyers by the King County Superior Court. Pursuant to an August 9, 2016 order of the Puyallup Tribal Court, Rideout-Earl is also the legal guardian of KS and KW.

2. KS is the minor child of the deceased Jacqueline Salyers and a resident of Pierce County.

3. KW is the minor child of the deceased Jacqueline Salyers and a resident of Pierce County.

4. OB is the minor child of the deceased Jacqueline Salyers and a resident of Rapid City, South Dakota.

5. IB is the minor child of the deceased Jacqueline Salyers and a resident of Rapid City, South Dakota.

6. Osceola Bluehorse is the father of IB and OB, and he resides in Rapid City, South Dakota. He is the legal guardian of his two children.

7. Scott Campbell is a police officer employed by the City of Tacoma and believed to be a resident of Pierce County, Washington.

8. Jane Doe Campbell is the spouse, if any, of Scott Campbell.

9. If Scott Campbell was married at the time of the incident that gives rise to this suit, then all acts of Scott Campbell alleged herein were for and on behalf of the marital community of Scott Campbell and Jane Doe Campbell.

10. The City of Tacoma is a municipal corporation, a political subdivision of the State of Washington, and the employer of police officers Scott Campbell, Scott Shafner, Jack Nasworthy, and Charles Taylor.

FIRST AMENDED COMPLAINT AND JURY DEMAND – 2

EAR010-0001 5751540

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

11. Scott Shafner is a police sergeant employed by the City of Tacoma and believed to be a resident of Pierce County, Washington.

12. Jane Doe Shafner is the spouse, if any, of Scott Shafner.

13. If Scott Shafner was married at the time of the incident that gives rise to this suit, then all acts of Scott Shafner alleged herein were for and on behalf of the marital community of Scott Shafner and Jane Doe Shafner.

14. Jack Nasworthy is a police detective employed by the City of Tacoma and believed to be a resident of Pierce County, Washington.

15. Jane Doe Nasworthy is the spouse, if any, of Jack Nasworthy.

16. If Jack Nasworthy was married at the time of the incident that gives rise to this suit, then all acts of Jack Nasworthy alleged herein were for and on behalf of the marital community of Jack Nasworthy and Jane Doe Nasworthy.

17. Charles Taylor is a police captain employed by the City of Tacoma and believed to be a resident of Pierce County, Washington.

18. Jane Doe Taylor is the spouse, if any, of Charles Taylor.

19. If Charles Taylor was married at the time of the incident that gives rise to this suit, then all acts of Charles Taylor alleged herein were for and on behalf of the marital community of Charles Taylor and Jane Doe Taylor.

## II.   JURISDICTION AND VENUE

20. This Court has jurisdiction over the subject matter of this suit pursuant to 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. This Court also has supplemental jurisdiction over the state law claims which arise out of the same nucleus of facts as the claims brought pursuant to federal statute.

21. All claims arose in the Western District of Washington. On information and belief, all parties reside in the Western District of Washington. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

FIRST AMENDED COMPLAINT AND JURY DEMAND – 3

EAR010-0001 5751540

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

### III. OPERATIVE FACTS

22. On January 28, 2016 shortly before midnight, Officers Scott Campbell and Aaron Joseph of the Tacoma Police Department were on duty and were searching for Kenneth E. Wright.

23. At that time and date there were outstanding arrest warrants for Kenneth Wright.

24. Wright was not aware that there were warrants outstanding for his arrest.

25. Officers Campbell and Wright were looking for Kenneth Wright in order to arrest him.

26. Officers Campbell and Joseph located Kenneth Wright in a car parked in front of the house located at 3314 S. Sawyer in Tacoma, Washington. The car was parked facing away from the house and towards the street.

27. Wright was in the front passenger seat of the car.

28. Jacqueline Salyers was in the driver's seat.

29. Officers Campbell and Joseph approached the parked car on foot.

30. Campbell approached the passenger side of the car.

31. Joseph approached the driver side of the car.

32. Both officers were wearing blue jumpsuits issued by the Tacoma Police Department.

33. When they approached they observed Kenneth Wright who appeared to be working on the car radio.

34. Officer Campbell drew his gun out of his holster and approached the parked car with his gun in his hand, pointed down at the ground.

35. It was dark.

36. Campbell yelled at Wright to show his hands.

FIRST AMENDED COMPLAINT AND JURY DEMAND – 4

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

EAR010-0001 5751540

37. Wright complied by dropping the stereo deck that he had been holding and raising his hands up.

38. Wright asked Campbell, "What did we do?"

39. Salyers asked Joseph what they had done wrong.

40. Salyers started the car engine.

41. Salyers put the car in drive and slowly began driving away.

42. Salyers turned the car to the right in order to avoid hitting another parked vehicle, a truck.

43. Neither officer was in front of the vehicle when Salyers began driving away.

44. Neither officer was in any danger of being hit by the car as Salyers began driving away.

45. Officer Campbell fired his gun at the car eight times.

46. Some of the shots fired by Campbell went through the front windshield.

47. Some of the shots fired by Officer Campbell went through the passenger side windows. The front seat passenger side window was shot out.

48. At least one shot went through the rear passenger window.

49. None of Campbell's gunshots hit Wright.

50. One of Campbell's gunshots hit Salyers in the head and killed her.

51. One of Campbell's shots hit her right arm and went through her right arm.

52. One of Campbell's shots grazed her abdomen on the right side of her body.

53. One of Campbell's shots hit her left wrist.

54. After Salyers was shot, the car she was driving traveled a short distance and then came to a stop in front of the house that was immediately to the south of the house where the car had been parked.

55. Wright yelled at Campbell, "You killed my wife."

56. Wright got out the car and fled the scene.

FIRST AMENDED COMPLAINT AND JURY DEMAND – 5

EAR010-0001 5751540

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

57. Medical aid was summoned and Salyers was pronounced dead at the scene.

58. Wright was not taken into custody that night.

59. Officer Campbell surrendered his duty weapon and two spare ammunition magazines to Detective Larsen shortly after 1 a.m. on January 29, 2015. Larsen found that Campbell was short 8 rounds of duty ammo.

60. Wright was arrested 17 days later.

61. Salyers was survived by four minor children who were of the following ages at the time of their mother's death: KS, age 10 months; KW, age 3; IB, age 11; and OB, age 13.

62. Salyers who was 32 years old at the time of her death, was also survived by her mother, Lisa Rideout-Earl.

63. All acts done by defendant Campbell were done in the course of his employment as a police officer employed by the City of Tacoma.

64. If he was in fact married at the time of this incident, all acts done by defendant Scott Campbell were done for the benefit of his marital community.

65. On March 28, 2019, the Court granted Defendants' motion for summary judgment and thereby dismissed the twelve causes of action that Plaintiffs plead in their original complaint. On the following day, March 29, 2019, the Court granted Plaintiffs' motion for leave to amend their complaint to add claims pertaining to their federal right to meaningful access to the courts. This Amended Complaint is filed in accord with that second order. To make it unambiguously clear that the first eleven causes of action are not being abandoned and to insure that they preserve the right to appeal their dismissal, the allegations of the original complaint are realleged in this Amended Complaint.

66. On January 22, 2016, at the request of a Tacoma police officer who was a member of the police department's Violence Reduction Team, Detective Terry Krause placed a police surveillance camera up on a pole in the area of 3400 South Sawyer Street in Tacoma.

FIRST AMENDED COMPLAINT AND JURY DEMAND – 6

EAR010-0001 5751540

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

67. The camera, manufactured by Axis, was set up facing the house at 3314 South Sawyer Street because the Violence Reduction Team believed that Kenneth Wright might be staying at that house.

68. Krause set up that camera to be motion activated. The manufacturer's software program used to access the camera is called View Commander.

69. Sometime in the early morning hours of January 29, 2016, after defendant Campbell had shot and killed Jacqueline Salyers, Sgt. Scott Shafner gave Detective Jack Nasworthy the administrative password ("the admin" password) that enabled a person to access the police surveillance camera posted on South Sawyer Street.

70. View Commander records show that Nasworthy accessed this camera at 4:10 and 4:17 a.m. on January 29th.

71. Nasworthy admits that he accessed the surveillance camera using the admin password on the morning of January 29th.

72. Nasworthy denies that he did this at the times shown on View Commander records. Nasworthy has asserted that he did this two hours earlier, and that the View Commander time records are off by two hours.

73. Independent analysis shows that View Commander's time records are basically correct; the times shown are accurate to within two or three minutes.

74. Nasworthy has stated under oath that when he went to look to see if this particular camera had recorded anything for the January 28, 2016 (the date of the shooting) he accessed the tab for recorded information.

75. In a sworn declaration filed previously in this case (Docket No. 66), Nasworthy has stated that when one accesses the tab for recorded information the screen shows a calendar format and any date for which recorded information has been stored is highlighted, and if nothing has been recorded on that date then that date is not highlighted. Nasworthy has stated under oath, "When I accessed the tab in View Commander for the

FIRST AMENDED COMPLAINT AND JURY DEMAND – 7

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

EAR010-0001 5751540

recorded information, the date of the shooting (January 28, 2016), was not highlighted, indicating that there was no recorded information. That is as far as I went, since the system was saying that there was nothing recorded for the 28th."

76. Contrary to Nasworthy's declaration, the View Commander calendar page for January 2016 shows that the date of January 28, 2016 is highlighted.

77. Defendant Charles Taylor investigated the supposed failure of the camera to record anything on January 28, 2016.

78. On January 28, 2016, Detective Krause left the country and went on vacation. He returned to the country on February 15, 2016. When he returned he learned there had been an officer-involved shooting on January 28th. On February 16, 2016, Krause retrieved the camera from a police storeroom in the building where Krause worked and he gave it to Defendant Taylor.

79. The camera was placed in police evidence on February 29, 2016.

80. On March 1, 2016, Detective Krause furnished Defendant Taylor with a copy of that portion of the View Commander log which covered the five day period from January 27th through February 1st.

81. On April 7, 2016, Defendant Taylor asked Krause to interpret the View Commander Log for him.

82. On April 8, 2016, Krause told Defendant Taylor "Admin has two users, Scott Shafner and me."

83. Also on April 8, 2016, Krause told Taylor, "The bottom line is that Scott did not access the server until January 29th."

84. On April 11, 2016, Defendant Taylor asked Krause, "What are you referring to regarding 'Scott.'"

85. On April 12, 2016, Krause replied to Taylor stating that "the only admin users are me and Scott Shafner. As I was out of the country, that leaves Scott."

FIRST AMENDED COMPLAINT AND JURY DEMAND – 8

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

EAR010-0001 5751540

86. At some unknown time prior to April 13, Defendant Taylor examined the archived video for this camera for January 28, 2016 with the assistance of Detective Krause.

87. Taylor and Krause saw that the camera *did* record some events that occurred shortly before midnight on January 28, 2016. These recordings are extremely brief. Taylor described them as "split second activations" of the recording function. One of these activations shows what Detective Krause identified as a police car in front of the house at 3314 South Sawyer Street at a time when defendant Campbell's patrol car is known to have been in front of that house.

88. Defendant Shafner admits that after the shooting, probably the next day, he looked at archived video taken by this camera.

89. The View Commander log for Tacoma police department surveillance cameras does show that someone with the "admin" password accessed a camera from 3:29 through 3:34 p.m. on January 29, 2016.

90. The camera was taken down on February 16, 2016 by defendant Shafner and placed in a storeroom.

91. Once the camera was taken down, it became possible to make deletions of recorded video without leaving any sign or indication of such a deletion. Once the camera was disconnected from the server where recorded video is stored, View Commander would not create any record of such a deletion. Thus, such a deletion could be made and leave no trace.

92. In independent testing of archived video from this particular camera, Dr. Gordon Mitchell has shown that it is possible to delete archived video without having that deletion detected by View Commander.

93. Captain Taylor directed Detective Krause to contact Axis, the manufacturer of the camera and to ask for assistance in determining why the camera allegedly failed to record more than the few short (just seconds) segments of the events which transpired between

FIRST AMENDED COMPLAINT AND JURY DEMAND – 9

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

EAR010-0001 5751540

roughly 11:40 p.m. and midnight on January 28, 2016.94. Detective Krause gave Axis remote access to the camera. Axis told Krause there was nothing wrong with the camera and could not supply any explanation as to why the camera allegedly failed to record properly on the night of January 28th.

95. Detective Krause told Captain Taylor that only a person with the admin password would have the capability of deleting recorded video from the server where recorded video was archived.

96. Captain Taylor wrote a report that he entitled "Camera History" which he submitted to Assistant Police Chief Peter Cribben, and that report was passed on to Don Ramsdell, Chief of Police.

97. In his report Captain Taylor stated that "we determined through interviews and activity logs that the camera (recording) could not have been edited or deleted at the time of the OIS."

98. Captain Taylor did not further define what time frame he intended to describe by using the phrase "at the time of the OIS."

99. It is possible that Nasworthy deleted video on the morning of January 29th.

100. It is possible that Shafner deleted video on the morning of January 29th.

101. It is possible that Shafner or Nasworthy deleted video on the afternoon of January 29th at the times when the View Commander log shows that someone with the admin password accessed the camera system.

102. It is possible that Shafner or Nasworthy deleted video after the surveillance camera was taken down by Shafner on February 16, 2016. If recorded video was deleted after the camera was taken down, View Commander would simply fail to detect it and it would not be shown on the View Commander log.

FIRST AMENDED COMPLAINT AND JURY DEMAND – 10

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

EAR010-0001 5751540

103. As noted in the Third Declaration of Dr. Gordon Mitchell (Dkt. #87), recorded video could have been deleted at any time up until February 29, 2016, when the stored video was entered into evidence.

104. In his written report, Captain Taylor never referred to the "admin" password by that name. Instead, in his report he stated that Nasworthy initially tried to log on to View Commander using "the CID password" (the password given to the Criminal Investigation Division), and when that failed he "received the correct password from SI" (Special Investigations). Taylor wrote that "we believe it was Shafner" who gave Nasworthy "the correct password."

105. In his report, Taylor wrote: "There are only two people who have edit privileges. Those two people are Detective Shafner and Detective Krause. Both have stated repeatedly that they never accessed the system *during the time* let alone edited anything. It should be noted that at the time of post-shooting activity with police involved, Detective Shafner was activated on the SWAT Team and deployed in the Turret of the Bearcat and unable to perform any tasks other than SWAT. Detective Krause was on vacation on a Cruise with his family in international waters." (Italics added). In his memo, Captain Taylor did not specifically define what he meant by "during the time."

106. Defendant Shafner was not in the Turret of the Bearcat at 4:10 and 4:17 a.m. on January 28, 2016 when View Commander shows someone using the admin password accessed the camera system. The SWAT team had ceased looking for Kenneth Wright at 3:45 a.m.

107. Defendant Shafner was not in the Turret of the Bearcat at 3:29 p.m. on January 29, 2016 when View Commander shows that someone using the admin password accessed the camera system. Defendant Shafner has admitted that he accessed the archive for this particular camera after the shooting.

FIRST AMENDED COMPLAINT AND JURY DEMAND – 11

EAR010-0001 5751540

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

108. Defendant Shafner did not write any police report regarding his actions on the night of January 28-29, 2016.

109. Defendant Nasworthy did not write any report regarding his actions on the night of January 28-29, 2016.

110. Defendant Nasworthy did write a Command Post log that purportedly documented the activities of the Tacoma Police Department SWAT team for the night of January 28-29, 2016.

111. The Command Post log was not disclosed to Plaintiff Lisa Earl in response to her Public Records Act request for all Tacoma police department records having to do with the shooting of Plaintiff Earl's daughter.

112. Defendant Nasworthy testified under oath that he never left the Command Post vehicle between 1:10 and 4:36 a.m. (the start and end times shown on the Command Post log) on January 29, 2016.

113. A transcript of 911 radio transmissions, however, shows that Nasworthy was "en route" to somewhere for a large block of time after 3 a.m.

114. Someone intentionally deleted video taken on the night of January 28, 2016 from the server that stored recordings made by the South Sawyer Street surveillance camera. That person was either, Defendant Shafner, Defendant Nasworthy, or someone acting in concert with one or both of them.

115. Defendant Taylor assisted in the cover-up of the deletion of archived video by writing a misleading report which stated that it was not possible that anyone had deleted video, when in fact it was possible, and at the very least Defendant Taylor knew that it was possible.

116. Defendants Taylor, Nasworthy and Shafner have given false deposition testimony in this case in an effort to cover-up the deletion of police surveillance video.

FIRST AMENDED COMPLAINT AND JURY DEMAND – 12

EAR010-0001 5751540

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

117. Defendants Shafner, Nasworthy, and Taylor have conspired to cover up the deletion of police surveillance video,

118. On February 16, 2016 the police camera was physically taken down by defendant Shafner without preserving the metadata in the camera prior to taking it down, resulting in the loss of additional data.

119. On the morning of January 28, 2016, members of the Tacoma Police Department's SWAT team ordered the occupants of the house at 3314 South Sawyer Street to come out of the house. The residents (five people) complied, and Tacoma police removed them from the area.

120. SWAT team members then entered the house at 3314 South Sawyer Street, without either a search warrant or an arrest warrant. They entered looking for Kenneth Wright but did not find him there.

121. Before they entered, SWAT team members noticed that private security cameras had been put up on the outside of the house. The SWAT team damaged those cameras. The Command Post log, which was not disclosed to Earl in response to her Public Records Act request, states that the SWAT team "removed" these private security cameras.

122. The actions of Shafner, Nasworthy, and Taylor deprived the Plaintiffs of evidence that significantly undermines Plaintiffs' ability to achieve effective access to the courts to seek redress for the killing of Salyers.

123. Shafner conspired with one or more Tacoma police officers to destroy evidence, and/or to conceal the fact of its destruction.

124. Nasworthy conspired with one or more Tacoma police officers to destroy evidence, and/or to conceal the fact of its destruction.

125. Taylor conspired with one or more Tacoma police officers to destroy, and/or conceal the fact of its destruction.

FIRST AMENDED COMPLAINT AND JURY DEMAND – 13

EAR010-0001 5751540

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

## IV. CAUSES OF ACTION

### First Cause of Action
### Deprivation of Fourth Amendment Rights
### (Defendant Campbell)

126. The Estate of Jacqueline Salyers realleges and incorporates by reference all the allegations set forth in the preceding paragraphs of this complaint.

127. Contrary to 42 U.S.C. §1983, Jacqueline Salyers was deprived of her Fourth Amendment rights under color of State law when defendant Campbell used excessive force against her by shooting her and killing her.

### Second Cause of Action
### Deprivation of Substantive Due Process Right to the Companionship of a Mother
### (Defendant Campbell)

128. Plaintiff KS realleges and incorporates by reference all the allegations set forth in the preceding paragraphs of this complaint.

129. Contrary to 42 U.S.C. §1983, while acting under color of State law, defendant Campbell deprived KS of her due process right to the companionship and society of her mother.

### Third Cause of Action
### Deprivation of Substantive Due Process Right to the Companionship of a Mother
### (Defendant Campbell)

130. Plaintiff KW realleges and incorporates by reference all the allegations set forth in the preceding paragraphs of this complaint.

131. Contrary to 42 U.S.C. §1983, while acting under color of State law, defendant Campbell deprived KW of her due process right to the companionship and society of her mother.

FIRST AMENDED COMPLAINT AND JURY DEMAND – 14

EAR010-0001 5751540

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

# Fourth Cause of Action
## Deprivation of Substantive Due Process Right to the Companionship of a Mother
### (Defendant Campbell)

132. Plaintiff OB realleges and incorporates by reference all the allegations set forth in the preceding paragraphs of this complaint.

133. Contrary to 42 U.S.C. §1983, while acting under color of State law, defendant Campbell deprived OB of his due process right to the companionship and society of his mother.

# Fifth Cause of Action
## Deprivation of Substantive Due Process Right to the Companionship of a Mother
### (Defendant Campbell)

134. Plaintiff IB realleges and incorporates by reference all the allegations set forth in the preceding paragraphs of this complaint.

135. Contrary to 42 U.S.C. §1983, while acting under color of State law, defendant Campbell deprived IB of her due process right to the companionship and society of his mother.

# Sixth Cause of Action
## Deprivation of Substantive Due Process Right to the Companionship of a Daughter
### (Defendant Campbell)

136. Plaintiff Lisa Rideout-Earl realleges and incorporates by reference all the allegations set forth in the preceding paragraphs of this complaint.

137. Contrary to 42 U.S.C. §1983, while acting under color of State law, defendant Campbell deprived Lisa Rideout-Earl of her due process right to the companionship and society of her daughter.

# Seventh Cause of Action
## Wrongful Death
### (Defendants Campbell and the City of Tacoma)

138. Plaintiff KS realleges and incorporates by reference all the allegations set forth in the preceding paragraphs of this complaint.

FIRST AMENDED COMPLAINT AND JURY DEMAND – 15

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

EAR010-0001 5751540

139. By shooting and killing Jacqueline Salyers, Defendant Campbell acted negligently and his negligence was the proximate cause of the wrongful death of KS's mother.

140. The City of Tacoma is liable for the above-described negligent conduct of defendant Campbell.

### Eighth Cause of Action
### Wrongful Death
### (Defendants Campbell and the City of Tacoma)

141. Plaintiff KW realleges and incorporates by reference all the allegations set forth in the preceding paragraphs of this complaint.

142. By shooting and killing Jacqueline Salyers, Defendant Campbell acted negligently and his negligence was the proximate cause of the wrongful death of KW's mother.

143. The City of Tacoma is liable for the above-described negligent conduct of defendant Campbell.

### Ninth Cause of Action
### Wrongful Death
### (Defendants Campbell and the City of Tacoma)

144. Plaintiff IB realleges and incorporates by reference all the allegations set forth in the preceding paragraphs of this complaint.

145. By shooting and killing Jacqueline Salyers, Defendant Campbell acted negligently and his negligence was the proximate cause of the wrongful death of IB's mother.

146. The City of Tacoma is liable for the above-described negligent conduct of defendant Campbell.

### Tenth Cause of Action
### Wrongful Death
### (Defendants Campbell and the City of Tacoma)

147. Plaintiff OB realleges and incorporates by reference all the allegations set forth in the preceding paragraphs of this complaint.

FIRST AMENDED COMPLAINT AND JURY DEMAND – 16

EAR010-0001 5751540

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

148. By shooting and killing Jacqueline Salyers, Defendant Campbell acted negligently and his negligence was the proximate cause of the wrongful death of OB's mother.

149. The City of Tacoma is liable for the above-described negligent conduct of defendant Campbell.

**Eleventh Cause of Action**
**Wrongful Death**
**(Defendants Campbell and the City of Tacoma)**

150. The Estate of Jacqueline Salyers realleges and incorporates by reference all the allegations set forth in the preceding paragraphs of this complaint.

151. By shooting and killing Jacqueline Salyers, Defendant Campbell acted negligently and his negligence was the proximate cause of the wrongful death of Jacqueline Salyers.

152. The City of Tacoma is liable for the above-described negligent conduct of defendant Campbell.

**Twelfth Cause of Action**
**Deprivation of Effective Access to the Courts**
**(Defendants Shafner, Nasworthy and Taylor)**

153. Plaintiffs reallege and incorporate by reference all the allegations set forth in the preceding paragraphs of this complaint.

154. Contrary to 42 U.S.C. §1983, while acting under color of State law, defendants Shafner, Nasworthy, and Taylor deprived Plaintiffs of their federal right to effective access to the court.

155. Defendants' actions damaged Plaintiffs' ability to succeed on other §1983 claims.

FIRST AMENDED COMPLAINT AND JURY DEMAND – 17

EAR010-0001 5751540

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

### Thirteenth Cause of Action
### Conspiracy to Deprive Plaintiffs of Effective Access to the Courts
### (Defendants Shafner, Nasworthy and Taylor)

156. Plaintiffs reallege and incorporate by reference all the allegations set forth in the preceding paragraphs of this amended complaint.

157. Contrary to 42 U.S.C. §1983, while acting under color of state law, defendants Shafner, Nasworthy and Taylor conspired to deprive Plaintiffs of their federal right to effective access to the courts.

158. Defendants' conspiratorial actions damaged Plaintiffs' ability to succeed on their other claims for relief.

## V.   JURY DEMAND

159. Plaintiffs demand a jury of twelve.

## VI.   TORT CLAIM

160. Plaintiffs filed a tort claim with the City of Tacoma on January 27, 2017.

## VII.   PRAYER FOR RELIEF

Wherefore, having stated their complaint against the defendants, plaintiffs pray for the following relief:

1. Judgment against all defendants for general damages and special damages in an amount to be proved at trial.

2. Judgment against defendants Campbell for punitive damages pursuant to 42 U.S.C. § 1988.

3. Judgment against defendants Shafner, Nasworthy, and Taylor for punitive damages pursuant to 42 U.S.C. § 1988.

FIRST AMENDED COMPLAINT AND JURY DEMAND – 18

EAR010-0001 5751540

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

4. An award of costs and attorneys' fees, as provided for in 42 U.S.C. § 1988, and any other applicable provision of statutory and common law.

5. For such other relief as the Court may deem just and equitable.

DATED this 5th day of April, 2019.

    *s/ James E. Lobsenz,* WSBA #8787
    *s/ Cindy G. Flynn,* WSBA #25713
Attorneys for Plaintiffs
CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104
Phone: (206) 622-8020
lobsenz@carneylaw.com
flynn@carneylaw.com

FIRST AMENDED COMPLAINT AND JURY DEMAND – 19

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

EAR010-0001 5751540

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of April, 2019, I electronically filed the foregoing FIRST AMENDED COMPLAINT AND JURY DEMAND with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for Defendants**
Jean P. Homan
TACOMA CITY ATTORNEY'S OFFICE
747 Market St Ste 1120
Tacoma WA  98402-3701
Tel:  (253) 591-5885
jhoman@ci.tacoma.wa.us

DATED this 5th day of April, 2019.

    *s/ Deborah A. Groth*
    Legal Assistant

FIRST AMENDED COMPLAINT AND JURY DEMAND – 20

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

EAR010-0001 5751540