UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LISA EARL, et al.,

            Plaintiffs,

  v.

SCOTT CAMPBELL, et al.,

            Defendants.

CASE NO. C17-5315 BHS

ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Plaintiffs Lisa Earl, individually and on behalf of minor children K.S. and K.W., Osceola Bluehorse on behalf of minor children O.B. and I.B, and the Estate of Jacqueline Salyers's ("Plaintiffs") motion for reconsideration, Dkt. 101, and Defendants City of Tacoma ("City"), Jack Nasworthy ("Nasworthy"), Scott Shafner ("Shafner"), and Charles Taylor's ("Taylor") (collectively "Defendants") motion for summary judgment, Dkt. 108. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants the motions for the reasons stated herein.

# I. PROCEDURAL HISTORY

On April 28, 2017, Plaintiffs filed a complaint against the City and Defendant Scott Campbell ("Campbell") asserting claims arising from the shooting death of Jacqueline Salyers ("Salyers"). Dkt. 1. Specifically, the Estate asserted an excessive force claim against Campbell, the individual plaintiffs asserted substantive due process claims against Campbell, and all Plaintiffs asserted wrongful death claims. *Id.*, ¶¶ 58–84.

On July 5, 2018, the City and Campbell filed a motion for summary judgment. Dkt. 27.

On September 13, 2018, Plaintiffs filed a motion to reopen discovery based on newly discovered evidence that supported an allegation that officers other than Campbell engaged in the spoliation of video evidence. Dkt. 48.

On September 26. 2018, the Court struck the trial date and remaining deadlines. Dkt. 67. On October 4, 2018, the Court granted Plaintiffs' motion, reopened discovery, and set a supplemental briefing schedule on the motion for summary judgment. Dkt. 71.

On November 28, 2018, Plaintiffs filed a motion for leave to amend the complaint. Dkt. 88.

On March 28, 2019, the Court granted the City and Campbell's motion for summary judgment on all of Plaintiffs' original claims. Dkt. 94. In relevant part, the Court concluded that Campbell was entitled to qualified immunity and that Plaintiffs' state law claims for negligence were barred as a matter of law because "a negligence claim may not be based on an intentional act such as Campbell's act of shooting Salyers." *Id.*

On March 29, 2019, the Court granted Plaintiffs' motion for leave to file an amended complaint against Defendants to assert a claim for deprivation of access to the courts and conspiracy to deprive access to the courts. Dkt. 95.

On July 3, 2019, Plaintiffs filed a motion for reconsideration requesting that the Court reconsider its order on summary judgment as to the negligence claims in light of *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537 (2019), which held that negligence claims were not automatically precluded by an officer's intentional act. Dkt. 101. On August 21, 2019, the Court requested a response to Plaintiffs' motion and renoted the motion. Dkt. 105. On September 20, 2019, Defendants responded. Dkt. 106. On September 27, 2019, Plaintiffs replied. Dkt. 107.

On October 15, 2019, Defendants filed the instant motion for summary judgment on Plaintiffs' access to court claims. Dkt. 108. On November 4, 2019, Plaintiffs responded. Dkt. 112. On November 7, 2019, Defendants replied. Dkt. 115.

On November 19, 2019, the Court granted the parties' motion to strike the trial date and remaining deadlines in light of the pending motions. Dkt. 117.

## II. FACTUAL BACKGROUND

Regarding the facts of Saylers's shooting, the Court refers to its previous order on summary judgment, Dkt. 94. Regarding the facts relevant to Plaintiffs' access to courts claims, the known facts are undisputed. The parties dispute the inferences that may be drawn from the circumstantial evidence. Because the facts are not disputed, the following factual recitation is taken almost verbatim from Plaintiffs' response.

The Tacoma Police Department ("TPD") had mounted a surveillance pole camera near the scene of the shooting. The TPD uses surveillance pole cameras and views the video footage via a software program named "View Commander." The View Commander software is installed on a server, and video footage from the surveillance cameras is also stored on a server. In order to delete video from that server, one must obtain a key from a secure location within the TPD, go to the server room, unlock the door to the server room, access the server, and delete archived files from the server. The server was also purportedly protected by a firewall. The only two members of the TPD with the capability to delete video were Detectives Terry Krause ("Krause") and Shafner. TPD allowed these Detectives to apparently delete any video from the server, but at some point after the shooting, the Detectives started transferring content to DVDs or portable hard drives.

On January 29, 2016, the night of the shooting, Nasworthy and Shafner responded to the scene as members of the TPD's S.W.A.T. team. While on scene in a mobile command unit, Nasworthy requested Shafner's administrative password for "View Commander." Krause would later express his anger at Shafner for providing this password because they were authorized to provide only "user" passwords to other members of the department. Moreover, Shafner did not recall how many administrative passwords he possessed.

When Nasworthy accessed the pole cam, he saw a live feed that was "black." He then went to the archived video feature within the View Commander software and did not see any archived recordings. Nasworthy believed that the pole camera may have only

been set up with a live feed. During this lawsuit, he learned that the camera had in fact been recording.

On February 16, 2016, Shafner removed the pole camera because it was no longer needed. No one told him, and he was not personally aware, that the pole camera had onboard logs, which were deleted when the camera was unplugged. Because those logs were lost, it is not possible to confirm what was occurring with the camera's functioning. Shafner did not write a report for either his actions as a participant in the SWAT response to the shooting or his involvement with the camera. Shafner also does not recall whether he looked at the archived video footage on the server after the camera was taken down.

Krause was on vacation at the time of the shooting and returned on February 15, 2016. Krause testified that the first thing he would have done when he returned from vacation was check the server. On February 15, 2016, while the pole camera was still installed, Krause checked the archived footage from the recordings and could only view short flashes of video. According to Krause's supplemental report, he downloaded the footage to a CD-R and booked it into evidence on February 29, 2016. Dkt. 113 at 27–28.

On some unspecified date, Taylor self-initiated an investigation into the camera and reviewed the camera video footage several times. On April 7, 2016, Krause emailed Taylor and stated that no administrative logins occurred from January 21, 2016 to January 29, 2016: "What do you need to know? There was an admin logon on the 21st of January and then not again until the 29th of January at 1345hrs and 1834hrs. The log does not indicate what was done with the computer during those logons." *Id.* at 30. On April 8, 2016, Krause emailed Taylor stating that "[t]he bottom line, is that [Schafner]

did not access the server until the 29th." *Id.* at 31. On April 12, 2016, Krause explained to Taylor that only Krause and Shafner had access to the server. *Id.*

At some unknown time, Taylor ordered a copy of the hard drive for the camera video footage. Krause appears to have been the one who preserved the archived video by pulling it off the server onto a hard drive. On April 20, 2016, Krause prepared a supplemental report pertaining to activities regarding the assessment of the camera, but Krause did not prepare a report regarding his analysis of the server or its data.

At some unidentified date, Taylor asked the Federal Bureau of Investigation ("FBI") to evaluate the archived footage. On April 13, 2016, Taylor emailed the TPD Chief of the Investigation Bureau and stated that "[t]he entire period the camera was posted was copied en-mass to a portable hard drive and given to the FBI for forensic evaluation." *Id.* at 68. Krause testified that an unidentified employee of the FBI was given direct access to the server to obtain the archived video available on the server.

On May 12, 2016, the Seattle division of the FBI requested that the FBI's Digital Evidence Laboratory, Operational Technology Division, Forensic Audio, Video and Image Analysis Unit enhance and conduct an authenticity examination of the pole camera recordings. Dkt. 109 at 207. On January 15, 2017, George R. Skaluba of that forensic unit prepared a report concluding "from approximately January 22, 2015 until February 16, 2016 . . . [n]o indication was found of editing or alteration of the content of the questioned pole camera recordings from [the supplied hard drive]." *Id.*

Plaintiffs retained Gordon Mitchell ("Mitchell") as a technical expert to review the computers and camera. Mitchell's opinions are as follows:

> It is my opinion that it is more likely than not that the archived footage on the server was vulnerable to have minutes or hours of the video simply deleted by the Administrator.
> It is still my opinion that it is more likely than not that someone deleted archived video from this camera. I cannot say whether that deletion was done at 4:10 or 4:17 a.m. on January 29 or 10:42 a.m. on February 29th, or anytime up to February 29th, most likely it was done sometime between January 29 and February 29.

Dkt. 114, ¶¶ 8–9.

## III. DISCUSSION

### A. Reconsideration

A court may revise or reconsider any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all parties." Fed. R. Civ. P. 54(b). One reason to revise or reconsider an interlocutory order is "whether a controlling or significant change in the law has occurred." *Negley v. F.B.I.*, 825 F. Supp. 2d 58, 60 (D.D.C. 2011) (quoting *Williams v. Savage*, 569 F. Supp. 2d 99, 108 (D.D.C. 2008).

In this case, Plaintiffs argue that reconsideration is warranted because *Beltran-Serrano* constitutes a significant change in the law and undermines the Court's analysis of their state law claims. Dkt. 101. The Court agrees. Although Defendants oppose the motion, they attack the merits of whether *Beltran-Serrano* applies to the facts of this case. At best, Defendants provide an alternative, post-hoc rationale for upholding the original decision, which the Court declines to either analyze or adopt on a motion for reconsideration. The proper procedure for considering the merits is a fully briefed

motion for summary judgment. Therefore, the Court grants Plaintiffs' motion and vacates its order in part as to Plaintiffs' state law claims.

**B.    Summary Judgment**

Defendants move for summary judgment on Plaintiffs' access to the courts claims on both procedural and substantive grounds. Regarding the former, Defendants cite authorities for the proposition that Plaintiffs' claims are unripe and premature because other avenues for relief are available on the underlying claims. For example, in *Delew v. Wagner*, 143 F.3d 1219 (9th Cir. 1998), the plaintiffs discovered an alleged cover-up by a municipal police department during the discovery phase of a wrongful death action in state court. When the plaintiffs moved to amend their complaint to add a § 1983 access to courts claim, the state judge denied the motion and instructed the plaintiffs to file a separate action. *Id*. at 1221. The plaintiffs did so, and the defendants promptly removed the matter to federal court. *Id.* at 1221–22. The district court dismissed the complaint for failure to state a claim and because the plaintiffs "had impermissibly split their causes of action by bringing a state wrongful death action and a separate action under section 1983." *Id.* at 1222. The Ninth Circuit reversed and remanded with instructions to dismiss the claims without prejudice so that the plaintiffs "would have the opportunity to re-file their section 1983 action if in fact the defendants' alleged cover-up actually rendered *all* state court remedies ineffective." *Id.* at 1223 (emphasis added).

In this case, Defendants argue that Plaintiffs' claims are unripe because they have failed to establish the absence of available state court remedies. Dkt. 108 at 11. The Court disagrees. While the *Delew* court referred specifically to state court remedies,

other Ninth Circuit and district court opinions in this circuit have broadened the rule to all tort remedies, including § 1983 claims. *See, e.g.*, *Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 625 (9th Cir. 1988) (cover-up "allegations may state a federally cognizable claim provided that defendants' actions can be causally connected to a failure to succeed in the present lawsuit [asserting § 1983 claims]."); *Carr v. Her*, 2:09-CV-0826 GEB KJN, 2012 WL 259457, at *12 (E.D. Cal. Jan. 25, 2012), *report and recommendation adopted*, 2:09-0826 GEB KJN P, 2012 WL 968075 (E.D. Cal. Mar. 21, 2012) ("the court finds plaintiff's cover-up claim is not ripe until he can show that his underlying suit—his pending Eighth Amendment claims against defendants—fails."). Therefore, the Court denies Defendants' motion on procedural grounds and will turn to the merits.

**1.   Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt").

*See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**2.    Merits**

"[T]o prevail on a backward-looking denial of access claim that is based on a defendant's 'cover-up' of evidence, a plaintiff must demonstrate that the defendant's cover-up rendered other available remedies ineffective." *Burns v. City of Concord*, 99 F. Supp. 3d 1007, 1028 (N.D. Cal. 2015) (citing *Delew*, 143 F.3d at 1223).

In this case, Plaintiffs assert that Defendants' destruction of video evidence rendered their excessive force and substantive due process claims ineffective. The problem with Plaintiffs' claim is that they lack evidence, direct or circumstantial, to establish that any relevant video evidence was lost or destroyed. At most, the evidence establishes that the server was accessed in February 2016 by someone for some reason on at least four occasions. Plaintiffs then request that the Court accept the inference that the person accessed the server to specifically delete video of the shooting. This is not a rational inference, it is pure speculation. Dr. Mitchell is even unable to opine that the allegedly deleted video was specific video of the shooting. Moreover, he fails to identify when this alleged deletion occurred because he fails to provide an electronic trail of such a deletion. In the absence of any evidence establishing when video was deleted, how much video was deleted, or any indication that video recorded during or around the time of the shooting was deleted, Plaintiffs rely on pure speculation to support their claims. Therefore, Plaintiffs have failed to establish that a material question of fact exists for trial, and the Court grants Defendants' motion on Plaintiffs' § 1983 access to the courts claims.

**C.     Supplemental Jurisdiction**

The Court may decline to exercise supplemental jurisdiction over pendant state law claims if "the claim raises a novel or complex issue of State law" or "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(1), (3). In this case, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. Not only do the claims raise novel issues of State law in light

of *Beltran-Serrano* but the Court also has dismissed all of Plaintiffs' federal law claims. Therefore, the Court declines to exercise supplemental jurisdiction over these claims.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that Plaintiffs' motion for reconsideration, Dkt. 101, and Defendants' motion for summary judgment, Dkt. 108, are **GRANTED**. The Court's previous order, Dkt. 94, is **VACATED** as to Plaintiffs' state law claims, and the Court declines to exercise supplemental jurisdiction over these claims.  Plaintiffs' § 1983 claims are **DISMISSED with prejudice** and Plaintiffs' State law claims are **DISMISSED without prejudice**.

The Clerk shall enter a **JUDGMENT** and close the case.

Dated this 18th day of February, 2020.

BENJAMIN H. SETTLE
United States District Judge